NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4681
_____

UNITED STATES OF AMERICA

v.

DAVID MOLESKI,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(Crim. Action No. 3-12-cr-00811-001)
District Judge:  Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2016

Before:   JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 20, 2016)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

David Moleski appeals twelve of the nineteen counts of his conviction following a

jury trial in the United States District Court for the District of New Jersey.  The

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

prosecution was the result of a fraud scheme that targeted the United States Department of the Treasury ("Treasury"), the Internal Revenue Service ("IRS"), the Treasury Inspector General for Tax Administration ("TIGTA"), the State of New Jersey, private creditors, and a credit agency. We will affirm.

## I.     Background[1]

From February 2008 to June 2009, Moleski mailed a number of fake financial instruments and letters to the Treasury, the IRS, the TIGTA, and private parties, in an attempt to discharge tax and consumer debts. First, in early 2008, he sent the Treasury two bogus documents titled "Private Offset Discharging and Indemnity Bond" and "Bonded Registered Bill of Exchange in Accord with HJR-192," by which he purported to open accounts for his personal use. (J.A. at 791, 796.) Over the next year, he sent through the mail additional fake financial instruments styled as "secured promissory notes" to the Treasury, the TIGTA, and several private banks, attempting to draw upon the nonexistent Treasury accounts to satisfy his obligations. Those mailings were lengthy, complex, and rife with arcane legal language. Moleski also sent letters to a credit reporting agency, claiming that the instruments he sent to the Treasury and his creditors had eliminated his debts. Based on the foregoing, on January 31, 2013, a

---

[1] Moleski only appeals his mail fraud convictions for Counts One through Twelve, so we will review only the facts relating to those counts.

nineteen-count superseding indictment charged Moleski with, *inter alia*,[2] twelve counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.

At trial, the government's evidence included the fraudulent documents, as well as several witnesses' testimony about the documents. The government's financial instruments expert, William Kerr, testified that, even though Moleski "ha[d] no authority to obligate the Treasury to open an account for him," (J.A. at 263), the instruments he mailed contained "criteria of ... legitimate financial instrument[s]," (J.A. at 262), and were of "high quality" (J.A. at 267.) He further testified that he "spent some hours going over them because they g[a]ve the appearance of being genuine documents ... ." (J.A. at 356.)

The government also presented witnesses to testify about how the recipients of Moleski's mailings would process them. Juliette Anne Anderson, a former quality and compliance manager for Advanta Bank, agreed that, when mailings such as Moleski's arrived at the bank, an employee would "try to determine whether [they] had any value." (J.A. at 228.) Similarly, Shauna Henline of the IRS Frivolous Return Program testified that it was her office's procedure to review each document received to make sure it was "truly frivolous" because even documents with "frivolous rhetoric" sometimes "contained a legitimate request." (J.A. at 549-50.)

---

[2] The indictment also charged Moleski with two additional counts of mail fraud, one count of wire fraud (in violation of 18 U.S.C. §§ 1343 and 2), one count of "corruptly endeavoring to impair and impede the due administration of the Internal Revenue Code" (in violation of 26 U.S.C. § 7212(a)), and three counts of filing "false, fictitious, and fraudulent claims" with the IRS (in violation of 18 U.S.C. §§ 287 and 2). As already noted, *supra* note 1, Moleski does not appeal his conviction on those charges.

After the parties rested, the Court properly instructed the jury that, in order to convict Moleski of mail fraud, the jury had to find that the government had proven beyond a reasonable doubt that he "knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises; ... that [he] acted with the intent to defraud; and ... that in advancing, furthering, or carrying out the scheme, [he] used the mails or caused the mails to be used." (J.A. at 675.) The Court went on to instruct the jury that "[t]he false or fraudulent representation must relate to a material fact or matter" and, further, that "[a] material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision" or "one that a reasonable person might have considered important in making his or her decision." (J.A. at 677.) Finally, the Court instructed the jury that "it is not necessary that the government prove that ... Moleski actually realized any gain from the scheme or that any intended victim actually suffered any loss." (J.A. at 678.)

The jury found Moleski guilty of all nineteen counts, and the Court sentenced him to four and a half years' imprisonment and five years of supervised release. This timely appeal followed.

4

## II.    Discussion[3]

On appeal, Moleski challenges his mail fraud convictions on Counts One through Twelve, arguing that the government's evidence of materiality was insufficient for the jury to find him guilty. A challenge to the sufficiency of evidence supporting a conviction places on the defendant a burden that is "extremely high." *United States v. Wright*, 665 F.3d 560, 567 (3d Cir. 2012) (internal quotation marks omitted). The verdict will stand "so long as there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *Id.* (internal quotations marks omitted). Thus, in a prosecution for mail fraud, we will affirm when the government was able to provide substantial evidence at trial that the defendant participated in "a scheme or artifice to defraud by means of a materially false or fraudulent pretense ... ." *United States v. Bryant*, 655 F.3d 232, 248 (3d Cir. 2011).

Moleski makes two arguments to challenge the sufficiency of the government's evidence of materiality. He first contends that "[t]he government presented insufficient evidence of 'materiality' ..., given that no one was deceived ... by [his] representations ... ." (Opening Br. at 22.) Proving successful deception, however, is not required to demonstrate materiality. *Neder v. United States*, 527 U.S. 1, 25 (1999). Requiring the government to show successful deception "would clearly be inconsistent" with the mail fraud statute, because the statute "prohibit[s] the 'scheme to defraud,' rather than the

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The parties disagree as to whether plain error or plenary review applies to this appeal. We conclude that the convictions stand under either standard, so we will frame our analysis in terms of plenary review.

completed fraud ... ." *Id.* Thus, in a fraud prosecution, "it is not a defense that the intended victim was too smart to be taken in." *United States v. Coffman*, 94 F.3d 330, 333 (7th Cir. 1996). "To hold otherwise would lead to the illogical result that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim." *United States v. Pollack*, 534 F.2d 964, 971 (D.C. Cir. 1976); *cf. United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct.").

Second, Moleski argues that the government presented insufficient evidence of materiality because, not only was no one actually deceived, "no one ... could have been" deceived by his representations. (Opening Br. at 22.) Moleski is correct that materiality requires a showing that the misrepresentation or omission in question "has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder*, 527 U.S at 16 (internal quotation marks and brackets omitted).[4] Thus, "[t]here may be attempts so feeble ... that the attempter is entitled to be acquitted, as a harmless fool." *Coffman*, 94 F.3d at 333-34.

Moleski's scheme, however, was not so feeble that it could not possibly have harmed anyone. Even if the demands in his documents were ultimately baseless, by

_____

[4] The *Neder* Court also endorsed the Restatement's clarification that a matter is material if:
> (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it."

527 U.S. at 22 n.5 (quoting Restatement (Second) of Torts § 538 (1977)) (internal quotation marks omitted).

obscuring them in obtuse legalese he could have confused the busy employees of financial institutions and the government who had to review them. The government presented substantial evidence from which a reasonable jury could (and apparently did) conclude that Moleski's misrepresentations had the tendency or ability to influence decisionmakers at the target organizations to disburse funds, clear debts, recognize debts as repaid, or take other action. The jury had the opportunity to examine Moleski's documents, which were long, complex, and official-looking. A documents expert testified that Moleski's instruments bore marks of legitimacy and required careful examination to understand their worthlessness. Finally, the jury heard from the documents' recipients, who likewise testified that they had to expend time and energy in determining the documents' validity and what course of action to take with them. Considering this evidence in the light most favorable to the prosecution, the jury could rationally determine that the documents could deceive their recipients. There was thus sufficient evidence of materiality to find Moleski guilty of the mail fraud charges he has appealed.

## III. Conclusion

For the foregoing reasons, we will affirm.